1  **TIFFANY & BOSCO, P.A.**
   Richard G. Himelrick (#004738)
2  J. James Christian (#023614)
   Seventh Floor Camelback Esplanade II
3  2525 East Camelback Road
   Phoenix, Arizona 85016
4  Telephone: (602) 255-6000
   Fax: (602) 255-0103
5  rgh@tblaw.com
6  jjc@tblaw.com
7
8  **THE ROSEN LAW FIRM P.A**.
   Phillip Kim
9  Laurence Rosen
   275 Madison Avenue, 34th Floor
10 New York, NY 10016
   Telephone: (212) 686-1060
11 Fax: (212) 202-3827
   pkim@rosenlegal.com
12 lrosen@rosenlegal.com
13
14 Counsel for Plaintiff

15            UNITED STATES DISTRICT COURT

16               DISTRICT OF ARIZONA

17

18 Matthew Stapen, individually and on       Case No. 2:15-cv-00673-DLR
   behalf of all others similarly situated,
19                                            CLASS ACTION
                  Plaintiff,
20                                            **AMENDED CLASS ACTION
             vs.                              COMPLAINT FOR VIOLATIONS OF
21                                            THE FEDERAL SECURITIES LAWS**
22 AudioEye, Inc.; Nathaniel T. Bradley;
   and Edward O'Donnell,                          JURY TRIAL DEMANDED
23
24                Defendants.
25
26
27
28

Plaintiff Matthew Stapen ("Plaintiff"), by Plaintiff's undersigned attorneys, individually and on behalf of all other persons similarly situated, alleges the following upon personal knowledge as to Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by Plaintiff's attorneys, which included, among other things, a review of Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding AudioEye, Inc. ("AudioEye" or the "Company"), analysts' reports, and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1. This is a securities class action brought on behalf of a class consisting of all persons and entities, other than Defendants and their affiliates, who purchased or otherwise acquired AudioEye securities from May 14, 2014 to April 1, 2015, inclusive (the "Class Period"), seeking to recover statutory rescission under Arizona's Securities Act or compensable damages caused by Defendants' liability for securities fraud under sections 10(b) and 20(a) and Rule 10b-5 of the Securities Exchange Act of 1934, and for violations of A.R.S. §§ 44-1991(A), 44-2003(A), and 44-1999 (the "Class").

**JURISDICTION AND VENUE**

2. The federal claims herein arise under § 10(b) and § 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and § 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).   The Arizona securities claims arise under A.R.S. §§ 44-1991(A), 44-2003(A), and 44-1999(B).

3. This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

4. The Court has jurisdiction over the subject matter of the Arizona claims under 28 U.S.C. § 1332(d) because the matters in controversy in this civil class action

exceed $5 million exclusive of interest and costs, at least one class member is a citizen of a state different than any of the Defendants, and it is believed there are hundreds if not thousands of potential class members.

5. The Court also has supplemental jurisdiction over the Arizona claims under 28 U.S.C. § 1367(a) because the Court has original jurisdiction over the federal claims under 28 U.S.C. § 1331 and the Arizona and federal claims arise from a common nucleus such that the claims would ordinarily be tried together.

6. In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications, and the facilities of the national securities exchange.

7. Venue is proper in this District under § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b), because AudioEye's statutory agent maintains its office in Phoenix and because the misleading statements that are the subject of this Complaint were transmitted into Maricopa County.

8. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

9. Plaintiff Matthew Stapen, as set forth in the attached Certification, acquired AudioEye securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

10. Defendant AudioEye focuses on creating voice driven technologies to enhance the mobility, usability, and accessibility of the Internet based content in the United States. The Company has a cloud-based cross-platform/cross-browser reader solution for accessible web browsing. The Company owns patented technology that changes vision-dependent user experiences on the computer (such as keypads and

mice) to a voice-driven medium.    AudioEye is a Delaware corporation headquartered in Tucson, Arizona and trades on the OTC under the ticker symbol "AEYE."

11.    Defendant Nathaniel Bradley ("Bradley") has served as the Company's President and Chief Executive Officer ("CEO") at all relevant times.

12.    Defendant Edward O'Donnell ("O'Donnell") at all relevant times served as the Company's Chief Financial Officer ("CFO") until his resignation on March 29, 2015.

13.    Defendants Bradley and O'Donnell are sometimes referred to as the "Individual Defendants."

14.    Defendant AudioEye and the Individual Defendants are referred to collectively as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements
### Issued During the Class Period

15.    The Class Period starts on May 14, 2014, when the Company filed a Form 10-Q for the quarter ending March 31, 2014 (the "1Q14 10-Q") with the SEC. The 1Q14 10-Q provided the Company's quarter-end financial results and position and stated that the Company's internal control over financial reporting was effective as of March 31, 2014. The 1Q14 10-Q was signed by Defendants Bradley and O'Donnell. The 1Q14 10-Q contained signed certifications under the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Bradley and O'Donnell, which stated that the financial information contained in the 1Q14 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

16.    On August 11, 2014, the Company filed a Form 10-Q for the quarter ending June 30, 2014 (the "2Q14 10-Q") with the SEC. The 2Q14 10-Q provided the Company's quarter end financial results and position and stated that the Company's internal control over financial reporting was effective as of June 30, 2014. The 2Q14 10-Q was signed by Defendants Bradley and O'Donnell. The 2Q14 10-Q contained

signed SOX certifications by Defendants Bradley and O'Donnell, which stated that the financial information contained in the 2Q14 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

17.    On November 7, 2014, the Company filed a Form 10-Q for the quarter ending September 30, 2014 (the "3Q14 10-Q") with the SEC. The 3Q14 10-Q provided the Company's quarter end financial results and position and stated that the Company's internal control over financial reporting was effective as of September 30, 2014. The 3Q14 10-Q was signed by Defendants Bradley and O'Donnell. The 3Q14 10-Q contained signed SOX certifications by Defendants Bradley and O'Donnell, which stated that the financial information contained in the 3Q14 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

18.    On January 12, 2015, the Company issued a press release entitled "*AudioEye to Report Profitable 2014 and Fourth Quarter Revenues of $3.25 Million; Company Anticipates Becoming Operating Cash Flow Positive in the First Quarter of 2015*" reporting the Company's preliminary financial results for the fourth quarter of 2014 and issuing guidance for the first quarter of 2015.   The press release, which was attached an exhibit to a Form 8-K filed with the SEC, states in relevant part:

> **TUCSON, Arizona** — (January 12, 2015) - AudioEye®, Inc. (OTCQB: AEYE) ("AudioEye") ("the Company") today announced that the Company expects to report results for the fourth quarter and year ended December 31, 2014 on or before March 31, 2015. The preliminary highlights of AudioEye's fourth quarter are reviewed below:
>
> - Bookings for the third and fourth quarters of 2014 approximated $5.3 million and $4.7 million, respectively. Approximately $1.0 million, or 19% of total third quarter bookings represented cash contracts, and $2.46 million, or 52% of total fourth quarter bookings consisted of cash contracts, an increase of 146%.
> - AudioEye recently closed on a private placement of equity consisting of 6,687,500 units, which generated gross proceeds to the Company of approximately $2.675 million.
> - ***The Company expects to report at least $3.25 million in revenue for the three months ended December 31, 2014. This compares with approximately $0.75 million in the prior-year quarter, representing a year-over-year increase of more than 332%. Revenue for the twelve months ended 2014 and 2013***

*approximated $12 million and $1.56 million, respectively, representing a year-over-year increase of more than 665%. Based on information currently available, the Company expects to be profitable for the year ended December 31, 2014.*

- *Over $4.7 million in aggregate contracts were booked during the fourth quarter of 2014. As of December 31, 2014, the Company had unbilled contracts totaling over $1.8 million that will become recognized revenues in 2015.*

- *Monetary contracts executed as a result of the Company's intellectual property licensing strategy increased more than 140%, from $1 million in the third quarter of 2014 to over $2.4 million in the fourth quarter of 2014.*

- *Recognized cash revenue for the three months ended December 31, 2014 totaled over $1 million,* representing an increase of more than 81% relative to cash revenue of $0.56 million for the quarter ended September 30, 2014.

- The annualized bookings "run rate" for the most recent quarter exceeded $18 million.

- *Anticipated operating receipts of cash payments of over $2 million at the beginning of the first quarter of 2015 should result in cash on hand in excess of $4 million*, the strongest cash position to begin any year in the Company's history.

- Projected and budgeted expenses for the first quarter of 2015 should be exceeded by cash inflows from operations. As a result, management believes that *AudioEye will become operating cash flow positive during the quarter ending March 31, 2015.*

\*     \*     \*

"*We are very excited that we have access to more capital than at any time in our history and look forward to becoming operating cash flow positive in the first quarter of 2015, which is a triumph for our team*," stated Nathaniel Bradley, Chief Executive Officer of AudioEye, Inc. "We are also pleased to announce the completion of a $2.675 million private placement and express our gratitude to all of our shareholders, without which AudioEye's opportunities would not be so robust and scalable. The proceeds from the equity raise and our cash revenue from sales will be reinvested into supporting our team's initiative of becoming the global leader in web accessibility. *We are focused intently on growth and leveraging our accomplishments in 2014 with even greater success in 2015.*  As a team, we are looking forward to an exciting 2015, which marks the 25th anniversary of the Americans with Disabilities Act."

(Emphasis added).

19.     The statements referenced in ¶¶ 15 – 18 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) AudioEye's financial statements contained material errors concerning the classification of revenue

and expenses; (2) the Company lacked adequate internal controls over its financial reporting; and (3) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

### The Truth Emerges

20. On April 1, 2015, the Company issued a press release announcing that its previously issued financial results for the first three quarters of 2014 and the guidance for the fourth quarter of 2014 and the full year of 2014 could no longer be relied upon. In the same press release, the Company revealed that Defendant O'Donnell resigned as CFO. The press release states in relevant part:

**TUCSON, Arizona** — (April 1, 2015) — (OTCQB: AEYE) ("AudioEye" or the "Company") today announced that on March 26, 2015, the Audit Committee of the Company's Board of Directors, based in part on the recommendation of the Company's management and in consultation with the Company's auditors and advisors, concluded that *because of errors identified in the Company's previously issued financial statements, the Company will restate its previously issued financial statements for the quarters ended March 31, June 30 and September 30, 2014.*

*The Audit Committee also authorized an internal review of controls and policies. Accordingly, investors should no longer rely upon the Company's previously released financial statements or other financial data for these periods, including any interim period financial statements, and any earnings releases relating to these periods. In addition, investors should no longer rely on the preliminary earnings release issued by the Company on January 12, 2015 relating to the quarter and year ended December 31, 2014.*

The Company also announced that it will host an investor conference call at 2:30 p.m. Eastern Time today, Wednesday, April 1, 2015 (see details below).

**FINANCIAL STATEMENT ISSUES**

*Based on the review to date, the Company anticipates removing all revenue derived from non-cash exchanges of a license of the Company for the license of the Company's customer and all revenue from non-cash exchanges of a license of the Company for services of the Company's customer, and reducing by a material amount previously reported license cash revenue.* The aggregate amount of revenue reported for the first nine months of 2014 for non-cash transactions was approximately $8,100,000. The reversal of revenue from the non-cash exchange transactions will also impact additional accounts, including reductions in Prepaid Assets, Intangible Assets and Amortization Expense. *The Company also expects that certain expenses will be reclassified. Additional adjustments may be identified pursuant to the outcome of the ongoing review and analysis.* The Company has also

begun a review of calendar year 2013 activity to determine whether there are any adjustments that may impact previously issued financial statements. There are no known adjustments to 2013 financials at this time. The cash balance is not impacted by these changes.

*     *     *

In accordance with Section 404 of the Sarbanes-Oxley Act of 2002, the Company's management has been assessing the effectiveness of the Company's internal controls involving financial reporting and disclosure. ***Based on this assessment, the Company expects to report material weaknesses in the Company's internal controls and therefore conclude that internal controls over financial reporting and disclosure are not effective.***

The Audit Committee and management have discussed the matters described herein, which will also be disclosed a Current Report on Form 8-K to be filed with the SEC today, with MaloneBailey, LLP, the Company's independent registered public accounting firm.

*     *     *

Also, effective March 29, 2015, Edward O'Donnell resigned his position as the Company's Chief Financial Officer.

(Emphasis added).

21.     On that same day, the Company filed a Form 8-K with the SEC stating that its internal controls over financial reporting and disclosure controls were not effective and further detailing the restatement of its previously issued financial statements for its quarters ended March 31, June 30, and September 30, 2014 and non-reliance on its preliminary earnings release. The Form 8-K states in relevant part:

**Item 4.02 Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.**

On March 26, 2015, the Audit Committee of the Board of Directors of AudioEye, Inc. (the "Company"), based in part on the recommendation of the Company's management and in consultation with the Company's auditors and advisors, concluded that ***because of errors identified in the Company's previously issued financial statements, the Company will restate its previously issued financial statements for its quarters ended March 31, June 30 and September 30, 2014.*** The Audit Committee also authorized an internal review of controls and policies. Accordingly, investors should no longer rely upon the Company's previously released financial statements or other financial data for these periods, including any interim period financial statements, and any earnings releases relating to these periods. ***In addition, investors should no longer rely on the preliminary earnings release issued by the Company on January 12, 2015 relating to the quarter and year ended December 31, 2014.***

Based on the review to date, the Company anticipates removing all revenue derived from non-cash exchanges of a license of the Company for the license of the Company's customer and all revenue from non-cash exchanges of a license of the Company for services of the Company's

7

customer, and reducing by a material amount previously reported license cash revenue.   The aggregate amount of revenue reported for the first nine months of 2014 for non-cash transactions was approximately $8,100,000.   The reversal of revenue on the non-cash exchange transactions will also impact additional accounts including reductions in Prepaid Assets, Intangible Assets and Amortization Expense. The Company also expects that certain expenses will be reclassified. Additional adjustments may be identified pursuant to the ongoing review and analysis.   The Company has also begun a review of calendar year 2013 activity to determine whether there are any adjustment that may impact previously issued financial statements.   There are no known adjustments to 2013 financials at this time.   The cash balance is not impacted by these changes.

The Company, along with its advisors and outside accountants, continues to perform its review in order to conclude and quantify the impact.   The Company expects to complete this process and file its restated financial statements over the course of the next several weeks.   The Company does not expect to timely file its Form 10-K for calendar year 2014 or its Form 10-Q for the quarter ended March 31, 2015.   Subject to the completion of the audit and the restatement of previously issued financial statements, the Company expects to be timely with its filings for the Form 10-Q for the quarter ended June 30, 2015.

In accordance with Section 404 of the Sarbanes-Oxley Act of 2002, the Company's management has been assessing the effectiveness of the Company's internal controls over financial reporting and disclosure controls. Based on this assessment*, the Company expects to report material weaknesses in the Company's internal controls and therefore conclude that internal controls over financial reporting and disclosure controls are not effective.*

The Audit Committee and management have discussed the matters disclosed in this Current Report on Form 8-K with MaloneBailey, LLP, the Company's independent registered public accounting firm.

(Emphasis added).

22.     On this news, the Company's shares fell $0.10 per share or over 24% to close at $0.31 per share on April 1, 2015, damaging investors.

23.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

24.     Plaintiff brings this action as a class action under Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired AudioEye securities during the Class Period that suffered

8

compensable damages related to the securities violations alleged herein (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

25.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, AudioEye securities were actively traded on the OTC. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by AudioEye or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

26.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

27.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

28.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws and Arizona state securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of AudioEye;

- whether the Individual Defendants caused AudioEye to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of AudioEye securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class are entitled to statutory rescission or have sustained damages and, if so, what is the proper measure of damages.

29.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**ADDITIONAL SCIENTER ALLEGATIONS**

30.     As alleged herein, AudioEye and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. As set forth elsewhere herein in detail, these Defendants, by virtue of their receipt of information reflecting the true facts regarding AudioEye, their control over, and/or receipt and/or modification of AudioEye's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning AudioEye, participated in the

10

fraudulent scheme alleged herein.

**NO SAFE HARBOR**

31.     AudioEye's "Safe Harbor" warnings accompanying its reportedly forward looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability. To the extent that projected revenues and earnings were included in the Company's financial reports prepared in accordance with GAAP, including those filed with the SEC on Form 8-K, they are excluded from the protection of the statutory Safe Harbor.   *See* 15 U.S.C. § 78u-5(b)(2)(A).

32.     Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of AudioEye who knew that the FLS was false. None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

**APPLICABILITY OF PRESUMPTION OF RELIANCE:**
**FRAUD-ON-THE-MARKET**

33.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- AudioEye securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

11

- the Company traded on the OTC and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold AudioEye securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

34.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

### APPLICABILITY OF PRESUMPTION OF RELIANCE: *Affiliated Ute* AND ARIZONA SECURITIES LAW

35.     Neither Plaintiff nor the Class (defined herein) need prove reliance – either individually or as a class – because under the circumstances of this case, which involve omissions of material fact as described above, positive proof of reliance is not a prerequisite to recovery, under the ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

36.     In addition, reliance is not an element of Plaintiff's claims under A.R.S. § 44-1991(A) and loss causation is not required for statutory rescission under subsections (A)(1) and (A)(3) of § 44-1991.

### LOSS CAUSATION/ECONOMIC LOSS

37.     The market for AudioEye securities was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading

statements and omissions as set forth above, AudioEye securities traded at artificially inflated prices during the Class Period Plaintiff and other members of the Class purchased or otherwise acquired AudioEye securities relying upon the integrity of the market price of AudioEye securities and market information relating to AudioEye, and have been damaged thereby.

38.     During the Class Period, as detailed herein, Defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of AudioEye securities and operated as a fraud or deceit on Class Period purchasers of AudioEye securities by misrepresenting the value of the Company's business and prospects. As Defendants' misrepresentations and fraudulent conduct became apparent to the market, the price of AudioEye securities fell precipitously, as the prior artificial inflation came out of the price. As a result of their purchases of AudioEye securities during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.,* damages, under the federal securities laws.

39.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about AudioEye's business and operations. These material misstatements and omissions had the cause and effect of creating, in the market, an unrealistically positive assessment of AudioEye and its business and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing AudioEye securities at artificially inflated prices, thus causing the damages complained of herein. When the true facts about the Company were revealed to the market, the inflation in the price of AudioEye securities was removed and the price of

13

AudioEye securities declined dramatically, causing losses to Plaintiff and the other members of the Class.

## COUNT ONE

### Violations of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

40.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41.     This Count is asserted against Defendants and is based upon section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

42.     During the Class Period, Defendants engaged in a plan, scheme, and course of conduct, under which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (a) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (b) artificially inflate and maintain the market price of AudioEye securities; and (c) cause Plaintiff and other members of the Class to purchase or otherwise acquire AudioEye securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

43.     Pursuant to the above plan, scheme, and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for AudioEye securities. Such

reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about AudioEye's finances and business prospects.

44.    By virtue of their positions at AudioEye, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. These acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

45.    Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of AudioEye securities from their personal portfolios.

46.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of AudioEye, the Individual Defendants had knowledge of the details of AudioEye's internal affairs.

47.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of AudioEye. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to AudioEye's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of

AudioEye securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning AudioEye's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired AudioEye securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

48.     During the Class Period, AudioEye securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of AudioEye securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of AudioEye securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of AudioEye securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

49.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

50.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's common stock during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT TWO

### Violations of Section 20(a) of The Exchange Act
### Against The Individual Defendants

51.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

52.     During the Class Period, the Individual Defendants participated in the operation and management of AudioEye, and conducted and participated, directly and indirectly, in the conduct of AudioEye's business affairs. Because of their senior positions, they knew the adverse non-public information about AudioEye's current financial position and future business prospects.

53.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to AudioEye's business practices, and to correct promptly any public statements issued by AudioEye which had become materially false or misleading.

54.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which AudioEye disseminated in the marketplace during the Class Period concerning the Company's business, operational and accounting policies. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause AudioEye to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were controlling persons of AudioEye within the meaning of section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of AudioEye securities.

55.     Each of the Individual Defendants, therefore, acted as a controlling person of AudioEye. By reason of their senior management positions and/or being directors of AudioEye, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, AudioEye to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control

17

over the general operations of AudioEye and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

56.     By reason of the above conduct, the Individual Defendants are liable under section 20(a) of the Exchange Act for the violations committed by AudioEye.

**COUNT THREE**

**Violation of A.R.S. §§ 44-1991(A)(3) & 44-2003(A)**
**Against All Defendants**

57.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

58.     This claim is brought against all Defendants for civil liability under A.R.S. § 44-2003(A) for their violations of A.R.S. § 44-1991(A)(1), (2), and (3).

59.     Defendants, individually and in concert, directly and indirectly, engaged and participated in a continuous course of business under which they hid adverse information concerning AudioEye's actual revenue, net income, and assets. Defendants knew or recklessly ignored that disclosure of AudioEye's fraud would reduce the value of AudioEye securities.

60.     The course of business and deceptive acts and practices through which Defendants disclosed materially misleading information about AudioEye and marketed AudioEye securities without disclosing the misstatements alleged herein violated A.R.S. § 44-1991(A)(1), (2), and (3).

61.     The Company and the Individual Defendants made, participated in, or induced the unlawful securities sales through which Plaintiff and the Class were misled.   Under A.R.S. § 44-2003(A), the Individual Defendants are liable for their own and for AudioEye's violations of § 44-1991(A)(1), (2), and (3).

62.     Because of the securities violations described in this Count, Plaintiff and the Class are entitled to, and by this complaint demand, damages or statutory rescission under A.R.S. § 44-2001(A).

18

63.     Individually and on behalf of the proposed Class, Plaintiff tenders to Defendants all consideration received in connection with the securities that Plaintiff purchased and offers to do any other acts necessary for rescission under A.R.S. § 44-2001(A).   In return, Plaintiff demands rescission with interest and attorney fees as provided in A.R.S. § 44-2001(A).

64.     This action was filed within two years after the discovery of the facts on which liability is based, or after the discovery should have been made by the exercise of reasonable diligence.

### COUNT FOUR

**Violation of A.R.S. § 44-1999(B)**
**Against Individual Defendants**

65.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

66.     Individually or as a group, or both, the Individual Defendants were statutory control persons with the power to control AudioEye.

67.     With respect to the AudioEye's violations of A.R.S. § 44-1991(A) described in Count Three, the Individual Defendants are jointly and severally liable to Plaintiff as controlling persons of AudioEye under A.R.S. § 44-1999(B).

68.     Because of the securities violations described in this Claim, Plaintiff and the Class are entitled to, and by this complaint demand, damages and statutory rescission under A.R.S. § 44-2001(A).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

(a)     Determining that this action is a proper class action, designating Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Lead Plaintiff's counsel as Class Counsel;

(b)     Awarding compensatory damages in favor of Plaintiff and Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest

thereon;

            (c)      Awarding rescission or damages in favor of Plaintiff and the Class on the Arizona claims against all Defendants, jointly and severally, for all such relief Plaintiff is entitled to as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

            (d)      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

            (e)      Such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.


Dated:   May 4, 2015.


**TIFFANY & BOSCO, P.A.**


By:   */s/ Richard G. Himelrick*
       Richard G. Himelrick
       J. James Christian
       Seventh Floor Camelback Esplanade II
       2525 East Camelback Road
       Phoenix, AZ 85016

**THE ROSEN LAW FIRM P.A**.
Phillip Kim
Laurence Rosen
275 Madison Avenue, 34th Floor
New York, NY 10016

Counsel for Plaintiff

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

        *s/ Shelley Boettge*
        Shelley Boettge